# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| ANTHONY BERNARD CHANDLER, | ) ) ) | |
| Petitioner, | ) ) | |
| vs. | ) ) | CAUSE NO. 3:08-CV-113 |
| SUPERINTENDENT, | ) ) ) | |
| Respondent. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Petition under 28 U.S.C. Paragraph 2254 for Writ of Habeas Corpus by a person in State Custody filed by Anthony Bernard Chandler, a *pro se* prisoner, on February 28, 2008. For the reasons set forth below, the petition (DE 1) is **DENIED.**

BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Chandler's burden to rebut this presumption of correctness with clear and convincing evidence. *Id.* Chandler is serving a 28-year sentence for convictions in Allen County Superior Court on two counts of child molestation. *State v. Chandler*, 02D04-9909-CF-447.

In September 1999, the state charged Chandler with five counts

of child molesting committed against T.S., his girlfriend's daughter, and T.S.'s cousin D.R. *Chandler v. State*, No. 02A03-0702-PC-59 (Ind. App. Ct. Oct. 11, 2007), at 1. On February 27, 2001, following a jury trial, Chandler was convicted of one count of Class B felony child molesting for performing sexual intercourse with T.S., and one count of Class C felony child molesting for fondling T.S. *Id.* He was acquitted of the charges relating to D.R. *Id.* Chandler was sentenced to 20 years for the Class B conviction and 8 years for the Class C conviction, to be served consecutively. *Id.* at 2.

Chandler appealed, arguing that the trial court committed fundamental error when it allowed the state to amend Count IV of the information, the Class B felony charge, to conform to the evidence at trial, namely, the date the act of child molestation occurred. *Chandler v. State*, No. 02A03-0105-CR-149 (Ind. App. Ct. Nov. 26, 2001), at 2. The appellate court affirmed, finding that the amendment was proper under state law and did not prejudice Chandler. *Id.* at 3-5. More than a year after the appellate court's decision, Chandler filed a *pro se* motion seeking leave to file a "belated" petition to transfer, which the Indiana Supreme Court denied. (DE 8-3.)

On November 20, 2002, Chandler filed a *pro se* petition for post-conviction relief asserting ineffective assistance of trial and appellate counsel. *Chandler*, No. 02A03-0702-PC-59, slip op. at

3. A public defender entered an appearance on Chandler's behalf, but was subsequently granted leave to withdraw. *Id.* On December 14, 2006, the trial court denied the post-conviction petition without an evidentiary hearing. *Id.*

Chandler appealed, asserting his ineffective assistance claims and also arguing that the trial court erred in failing to conduct an evidentiary hearing before denying the petition. *Id.* at 3-12. The appellate court affirmed. *Id.* Chandler filed a petition to transfer in the Indiana Supreme Court, which was denied. (DE 8-6.)

On February 28, 2008, Chandler filed this federal habeas petition raising the following five claims: (1) trial counsel was ineffective in not objecting when the state sought to amend Count IV during trial; (2) trial counsel was ineffective in failing to investigate and interview an exculpatory witness; (3) trial counsel was ineffective in failing to object to statements by the prosecutor during closing argument; (4) trial counsel was ineffective in not moving for a directed verdict on Count IV; and (5) a "fundamental error" occurred when the trial court allowed the state to amend Count IV during trial. (DE 1.)

DISCUSSION

This petition is governed by the provisions of the Anti-Terrorism and Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA allows a district

3

court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can only grant an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court or if the state court reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application"

4

clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively unreasonable." *Id.*

Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). The exhaustion requirement is premised on concerns of comity; the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claims in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845.

The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a habeas petition when either: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state law procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would

now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Perruquet*, 390 F.3d at 514. When a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *Boerckel*, 526 U.S. at 853-54.

A habeas petitioner can overcome a procedural default by showing cause for failing to abide by state procedural rules and a resulting prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986).

A habeas petitioner may also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman*, 501 U.S. at 750. Under this narrow exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

**A.    Ineffective Assistance Claims**

In claims one, two, three, and four, Chandler claims that his trial counsel provided ineffective assistance. (DE 1 at 5-7.) "The Sixth Amendment entitles criminal defendants to the 'effective assistance of counsel'---that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, ---U.S.---, 130 S. Ct. 13, 16 (2009).

The governing Supreme Court case for resolving an ineffective assistance claim is *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel under *Strickland*, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. The court's review of counsel's performance is "highly deferential," and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004). The prejudice prong requires the petitioner to show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Where it is expedient to do so, a court may resolve an ineffective assistance claim solely on the prejudice prong; in other words, where the petitioner cannot establish prejudice, there is no need to consider in detail whether counsel's performance was constitutionally deficient. *See Strickland*, 466 U.S. at 697; *Watson*

7

*v. Anglin*, 560 F.3d 687, 689-90 (7th Cir. 2009).

Here, in rejecting Chandler's ineffective assistance claims, the Indiana Court of Appeals properly identified *Strickland* as the governing standard. *Chandler*, No. 02A03-0702-PC-59, slip op. at 8. Accordingly, the question for this court is whether the appellate court's resolution of the claims was unreasonable.

**1.    State's Amendment of the Information**

Grounds one and four are both linked to the state's amendment of Count IV at trial; Chandler argues that trial counsel was ineffective in not objecting to the amendment and also in failing to move for a directed verdict on this count since, absent the amendment, the evidence at trial did not show that he committed an act of child molestation on the date charged in the information. (DE 1 at 5-6; DE 14-2 at 4-11.)

Count IV of the information originally charged Chandler with committing an act of child molestation against T.S. sometime between March 29, 1999, and April 2, 1999. *Chandler*, No. 02A03-0105-CR-149, slip op. at 2. At trial, T.S.---who was then nine years old---testified that the incidents of molestation occurred when she was around four and five years old. (DE 11, Trial Tr. at 174-227.) She stated that the molestation occurred when her cousin D.R. was living with her family, which T.S.'s aunt testified was between November 1995 and March 1996. (*Id.* at 182-99, 297.) Accordingly, the state moved to amend the information to reflect

that the molestation alleged in Count IV occurred during this period. *Chandler*, No. 02A03-0105-CR-149, slip op. at 2.

The appellate court rejected Chandler's ineffective assistance claims pertaining to the amendment of Count IV, finding that the amendment was proper under state law and did not prejudice Chandler. *Chandler*, No. 02A03-0702-PC-59, slip op. at 3-6. This determination was not unreasonable.

An ineffective assistance claim based on counsel's failure to object is tied to whether an objection would have been warranted under state law. *Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001). "Only in a rare case will a court find ineffective assistance of counsel based upon a trial attorney's failure to make an objection that would have been overruled under the then-prevailing law." *Id.* (internal citation omitted.)

Indiana law permits the state to amend an indictment or information at any time "before, during, or after the trial . . . [with] respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant." IND. CODE § 35-34-1-5(c). This includes amending "the time or place at which the offense was committed where the time or place is not of the essence of the offense." IND. CODE § 35-34-5(a)(7). Under state law, time is not an element of a child molestation offense. *See* IND. CODE § 35-42-4-3; *Ricketts v. State*, 498 N.E.2d 1222, 1224 (Ind. 1986) (time of child molestation was not "essence" of the

9

offense, and therefore trial court did not err in allowing the state to amend the information at trial to change time of alleged act). The amendment was thus permissible under state law.

Moreover, there is no indication from the record that the amendment prejudiced Chandler, since he did not claim an alibi or raise another defense where the dates of the incidents were critical. Instead his strategy was to attack the credibility and memory of T.S. and her cousin; if anything, this strategy would be bolstered where the date of the incident was four years earlier than originally alleged. Additionally, the amended date contained in Count IV was within the same time frame as the date alleged in Count V, such that Chandler was on notice from the outset of the proceeding that he had to defend against charges of child molestation occurring between November 1995 and March 1996. *See Chandler*, No. 02A03-105-CR-149, slip op. at 4.

For these reasons, Chandler's counsel did not have a basis to object to the state's amendment, and moving for a directed verdict on Count IV would have been futile in light of the state's ability to amend the information. Accordingly, Chandler has not established that counsel's performance was deficient or that had counsel taken these actions, the result of the proceeding would have been different. The state court's rejection of Chandler's ineffective assistance claims was not unreasonable, and accordingly, grounds one and four are denied.

## 2. Failure to Investigate

In ground two, Chandler claims that trial counsel was ineffective in failing to investigate and interview Dr. G.R. Beasley, an emergency room doctor in Ohio who examined T.S. in 1996 at the behest of her father, who reported that he noticed some discharge and swelling and believed she might have been molested.[1] (DE 1 at 5; DE 14-2 at 12.) The state court rejected this claim, finding that even assuming counsel erred in failing to interview Dr. Beasley, Chandler failed to show prejudice. *Chandler*, No. 02A03-0702-PC-59, slip op. at 10-11.) Based on the record, this determination was not unreasonable.

In his traverse, Chandler states that Dr. Beasley could have provided "findings" that were "to the contrary to what the State's expert testified to at trial." (DE 14-2 at 12.) This assertion is not borne out by the record. At trial, the state's expert, a pediatrician who examined T.S. in 1999 after she told her aunt that Chandler had molested her, testified that his examination showed what appeared to be an injury to the hymen that had partially healed. He testified that he could not confirm or deny whether T.S. was molested, but he opined that the medical evidence was

---

[1] As a result of T.S.'s visit to the emergency room, child protective services in Indiana were notified, but it appears they determined they had no jurisdiction since T.S. was living with her father in Ohio at the time.(*See* DE 11, Appellant's Appx. at 250.) It is not clear from the record whether anyone followed up with the authorities when T.S. later returned to her mother's home in Indiana.

consistent with T.S.'s account that she had been molested a few years earlier when she was around five years old. (DE 11, Trial Tr. at 273-83.)

The report from Dr. Beasley (which Chandler attached to his petition) would not have been helpful to the defense. Dr. Beasley's report indicates that he could not confirm or deny whether T.S. had been molested, but he noted that "the hymen did appear to be somewhat enlarged with an opening of 3 or 4 millimeters." (DE 1-2 at 3.) He also noted that T.S. reported she had been molested by "Anthony" and another individual.[2] (*Id.*) Given the length of time between the two examinations, Dr. Beasley's report was not necessarily contradictory of the state's medical evidence, and the anomaly Dr. Beasley noted provided support for T.S.'s account that she had been molested. The report also was not exculpatory of Chandler since T.S. mentioned him by name as having molested her.

Furthermore, the heart of the state's case was not the medical evidence, which was inconclusive, but T.S.'s account of what Chandler did to her. The jury, which had the opportunity to hear her testimony and view her demeanor, found her credible. Chandler has not shown that absent any alleged error by counsel in failing to interview Dr. Beasley or introduce his report, the result of the proceeding would have been different. The state court's rejection

---

[2] The court notes that Chandler submitted a very poor copy of Dr. Beasley's report and the name of the other individual mentioned by T.S. is not legible. (*See* DE 1-2 at 3.)

of this claim was not unreasonable and, accordingly, the claim is denied.

### 3. Prosecutor's Closing Argument

In ground three, Chandler claims that trial counsel was ineffective in failing to object to comments made by the prosecutor during closing arguments. (DE 1 at 6; DE 14-2 at 13-14.) Specifically, Chandler asserts that the prosecutor made improper comments about Woody Allen molesting his step-daughter and about alleged conduct by former President Bill Clinton, which were inflammatory and "placed petitioner in grave peril." (DE 1 at 6.) The state court rejected this claim, finding that Chandler failed to show he was prejudiced by counsel's failure to object.[3]

To establish an ineffective assistance of counsel claim based on counsel's failure to object to alleged improper comments by the prosecutor, Chandler must establish that the prosecutor's comments deprived him of a fair trial. *Pisciotti v. Washington*, 143 F.3d 296, 301 (7th Cir. 1998). Under *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), the question is "whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."

---

[3] The Indiana Court of Appeals did not specifically address this claim in affirming the denial of post-conviction relief, and so the last reasoned decision on this claim was that of the trial court denying the post-conviction petition. (*See* DE 8-7 at 1, 20-21.)

The record reflects that during closing arguments, the prosecutor addressed certain sexual behavior by Chandler which T.S. and her cousin described. This included their claim that he molested them in a public bathroom at a store and D.R.'s claim that he had inserted what looked like a cigar into her vagina. The prosecutor stated:

> [I]t makes perfect and complete sense to me that somebody that finds sexual gratification out of a four or a five year old, probably has some interesting sexual habits. Maybe he gets a kick out of doing stuff in a public place with the risk of being caught. Maybe that's an excitement to him. In fact, years ago, I don't know if anybody ever watches Woody Allen movies. There was a Woody Allen and Diane Keaton movie that that [sic] was the subject of the entire movie, the entire two hour movie was their strange relationship, in that they liked the thrill of having a relationship with each other in a public place, and the risk of being caught. Anthony Chandler is not the only person in this world who uses objects as sex toys. I think if you would have read the newspaper during the time that Bill Clinton was President and you call your memory back to those times, Anthony Chandler is not the only one who has an interest in cigars. If you would've read Monica Lewinsky's statements, you would clearly see that our late President shared that same interest. What it comes down to is, if you choose not to believe these children, what would possibly be the motive for them and where would the information come from for them to give you that information on the witness stand, if it were not the truth.

(DE 11, Trial Tr. at 347-48.)

Contrary to Chandler's assertion, the prosecutor did not say anything about Woody Allen molesting his step-daughter, and none of

14

these rather innocuous comments referencing popular culture would have a tendency to cause the jury to convict Chandler for an improper reason. Given the disturbing evidence that was already before the jury regarding Chandler's sexual acts, he has not shown that the prosecutor's comments deprived him of a fair trial. Accordingly, the state court's rejection of this claim was not unreasonable, and the claim is denied.

## B. Fundamental Error

Finally, in claim five, Chandler argues "fundamental error" in connection with the state's amendment of Count IV during the trial. (DE 1 at 8; DE 14-2 at 5-6.) This was not raised as a free-standing claim in the state proceedings; rather, because Chandler waived a claim of error by not objecting to the state's amendment at trial, he argued "fundamental error" in order to obtain review of the claim in his direct appeal. *See Chandler*, No. 02A03-0105-CR-149, slip op. at 3 ("Chandler admits that he waived this issue by failing to object to the court's ruling during trial. To avoid waiver, he argues that the trial court's grant of the State's motion to amend Count IV constituted fundamental error."); *see also Ortiz v. State*, 766 N.E.2d 370, 375 (Ind. 2002). ("The fundamental error doctrine provides a vehicle for the review of error not properly preserved for appeal.").

In essence, Chandler is arguing that the amendment was

improper. (*See* DE 1 at 8; DE 14-2 at 5-6.) To the extent this is even a cognizable claim that rests on federal constitutional law, the state argues that it is procedurally defaulted. The court agrees. When a state court denies a claim based on an adequate and independent state procedural ground, the claim is defaulted and cannot be reviewed on the merits in a federal habeas proceeding. *Coleman*, 501 U.S. at 729. Here, the state court determined that Chandler waived his claim regarding the state's amendment by not objecting at trial, and waiver constitutes an adequate and independent state procedural ground that bars federal review. *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009). The fact that the Indiana court considered whether the "fundamental error" doctrine applied does not change this outcome. The Seventh Circuit has determined that an Indiana court's consideration of whether there was fundamental error in connection with a waived claim does not undermine reliance on the independent state procedural ground of waiver. *Lee v. Davis*, 328 F.3d 896, 900 (7th Cir. 2003). Because the state court determined---and Chandler acknowledged---that he waived the claim of error pertaining to the state's amendment of the information at trial, the claim is procedurally defaulted.

Although it is not clear, Chandler appears to argue that the court should nevertheless review the claim under the fundamental

miscarriage of justice exception.[4] To establish actual innocence under the miscarriage of justice exception, the petitioner must establish "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To do so he must come forward with new, reliable evidence and must establish that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. Chandler appears to believe that Dr. Beasley's report satisfies this criteria, but as discussed above, the report was not exculpatory. The report actually provided evidence that T.S. may have been molested, and T.S. told Dr. Beasley that "Anthony" had molested her. In short, Chandler has failed to establish actual innocence.

Even assuming Chandler could overcome the procedural default with a showing of actual innocence, his claim has no merit. As fully discussed above, the state's amendment of the information was proper under state law and did not prejudice him. For all these reasons, claim five is denied.

---

[4] Chandler alternatively refers to this claim as "fundamental error" and a "fundamental miscarriage of justice" so it is not clear whether he is attempting to invoke the doctrine as a means of overcoming his procedural default or simply characterizing the claim he raised in state court. (*See* DE 1 at 8; DE 14-2 at 5-6.) Out of an abundance of caution, the court will presume he is invoking the fundamental miscarriage of justice exception.

CONCLUSION

For the reasons set forth above, the petition (DE 1) is **DENIED**.

DATED: February 3, 2010            /s/ RUDY LOZANO, Judge
                                   United States District Court